# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00767-SCT

*TRACEY BYRD*

*v.*

*IMPERIAL PALACE OF MISSISSIPPI AND CHRISTINE SAUCIER*


| | |
|---|---|
| DATE OF JUDGMENT: | 4/11/2000 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT O. HOMES, JR. |
| ATTORNEYS FOR APPELLEES: | TIMOTHY W. LINDSAY |
| | BRITT R. SINGLETARY |
| NATURE OF THE CASE: | CIVIL -CONTRACT |
| DISPOSITION: | AFFIRMED - 12/06/2001 |
| MOTION FOR REHEARING FILED: | 1/4/2002; denied 2/21/2002 |
| MANDATE ISSUED: | 2/28/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This matter arises from an employment dispute between Tracey Byrd (Byrd) and her employer, Imperial Palace of Mississippi (Imperial). Byrd was either terminated from or voluntarily left this position. She later filed suit against Imperial and her supervisor (collectively Imperial) regarding her leaving her employment. The trial court granted Imperial's summary judgment motion. Aggrieved, Byrd appeals to this Court. We find no reversible error and therefore affirm.

## FACTS

¶2. Tracey Byrd ("Byrd") initially applied for employment with Imperial Palace of Mississippi (Imperial) on August 17, 1997. In April of 1998, Imperial hired Byrd. Her supervisor was defendant Christine Saucier ("Saucier"). At the time of her hiring, Imperial provided Byrd with an employee handbook that stated:

> This handbook is not and should not be construed as a contract for employment, as you have the right to terminate the employment relationship at the Imperial Palace of Mississippi for any reason, with or without cause. Therefore, the Imperial Palace of Mississippi reserves the same right.

> \*\*\*

> All employees of the Imperial Palace of Mississippi are at-will employees...This Employee Handbook is not an express or implied contract of employment, but rather an overview of working rules and

benefits at our company.

The handbook also contained a provision titled "Employment At Will Doctrine," which stated:

All employees of the Imperial Palace of Mississippi are at-will employees. Employment at-will simply means the traditional relationship between employer and employee, so that the relationship is for no fixed period of time and may be terminated by either party unilaterally for any reason, or for no reason, with or without cause. This Employee Handbook is not an express or implied contract of employment, but rather an overview of working rules and benefits at our company. No employee in any supervisory capacity has the authority to enter into any type of contract of employment, or make any agreement or promise of continued employment with any employee, or in any way modify the at-will relationship. Your status as an employee at-will shall continue even after your completion of your introductory period.

In August of 1998, Byrd's employment at Imperial ended. Byrd alleges that she was terminated because of personal problems that developed between herself and Saucier, after she refused to do Saucier's personal errands. In her deposition, Saucier alleged that Byrd informed her that she quit her position. Byrd contends that she filed a timely grievance regarding her termination, in accordance with the employee handbook, but Imperial refused to grant her a hearing. Byrd subsequently filed a suit against Imperial and Saucier.

¶3. After discovery, Imperial moved for summary judgment alleging that Byrd quit her position or, alternatively, her claim of wrongful discharge failed under Mississippi law in view of Byrd's at-will status and her lack of an enforceable contract. The trial court granted Imperial summary judgment. Byrd filed a timely notice of appeal.

## STANDARD OF REVIEW

¶4. In reviewing orders of summary judgment, this Court proceeds de novo. *Cities of Oxford v. Northeast Miss. Elec. Power Ass'n*, 704 So. 2d 59, 64 (Miss. 1997). If the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, this Court will not reverse. M.R.C.P. 56.

## ANALYSIS

¶5. Byrd raises several issues in her brief to this Court,[1] however we find that the issues may be summarized into a single discussion of whether the trial court erred in granting Imperial's motion for summary judgment.

**WHETHER THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO ISSUE OF MATERIAL FACT AND GRANTING IMPERIAL PALACE SUMMARY JUDGMENT.**

¶6. At issue is a section in Imperial's handbook entitled Grievances, which states that:

When the complaint involves a written warning, supplemental evaluation, suspension, or termination and an equitable settlement is not reached in the first two steps, the employee may file a written request for a Personnel Review Board Hearing to the Personnel Department within ten (10) calendar

days of the event if it is a non-termination offense and within five (5) calendar days following a termination. . . .

¶7. Byrd begins her argument by discussing the seminal case of ***Bobbitt v. The Orchard, Ltd.***, 603 So.2d 356 (Miss. 1992). Byrd contends that ***Bobbitt*** held, despite the disclaimer language and despite existence of the employment at-will doctrine, that an employer is still required to abide by its own employee handbooks or manuals. The Orchard application, similar to the Imperial handbook, Byrd argues, contained a disclaimer in its employment application as follows:

> I understand that . . . my employment and compensation may be terminated with or without notice at any time, at the option of either The Orchard or myself . . . . I understand that no representative, employee or resident of the Orchard has authority to enter into an agreement with me for employment for any specified period of time, or to make any agreement with me contrary to the foregoing.

***Bobbitt***, 603 So.2d at 357. Therefore, Byrd surmises, the at-will employment doctrine and the existence of disclaimer language confirming only that the employment was terminable at-will do not relieve Imperial of the duty to exercise such at-will termination in accordance with the rules and procedures specified in its own employee handbook.

¶8. In ***Bobbitt***, the plaintiff was employed by The Orchard, a retirement complex, which provided her with an employee manual that outlined The Orchard's conduct and discipline procedures. ***Id.*** The manual provided a list of major and minor offenses and the disciplinary actions for the offenses. ***Id.*** at 358. Bobbitt was terminated from her position for an infraction that was in contradiction to the manual. ***Id.*** After Bobbitt filed suit, The Orchard moved for summary judgment on the basis that the contract was terminable at-will. ***Id***. at 356. The trial court granted The Orchard's motion. ***Id.*** at 360.

¶9. This Court stated that the issue presented in ***Bobbitt*** case was:

> [W]hen an employer furnishes its employees a detailed manual stating its rules of employment, and setting forth procedures that will be followed in event of infraction of its rules of employment, can it completely ignore the manual in discharging an employee for an infraction clearly conferred by the manual?

***Id.*** The Court held that the provision in the manual did not create a right to employment for any definite period of time, but it did create an obligation on the part of The Orchard to follow its provisions in reprimanding, suspending, or discharging an employee for infractions covered in the manual. ***Id.*** at 361.

¶10. In reaching this holding, the Court distinguished the holdings of ***Shaw v. Burchfield***, 481 So.2d 247 (Miss. 1985) and ***Perry v. Sears, Roebuck & Co.***, 508 So.2d 1086 (Miss. 1987). In ***Shaw***, this Court discussed its, "growing unease with the harshness of the rule authorizing the employer to terminate an employment contract for good reason, bad reason, or no reason at all." ***Shaw***, 481 So.2d at 255. ***Shaw*** concluded that the at-will rule was fair because the employee was as free to quit as the employer to discharge him. ***Id.***

¶11. In ***Perry***, this Court held that a personnel manual "can create contractual obligations, even in absence of a written agreement." ***Perry***, 508 So.2d at 1088. While discussing the harsh nature of the at-will doctrine, ***Perry*** upheld the employer's right to discharge Perry because the pension plan manual upon which Perry based his claim, explicitly gave the company the right to terminate or discharge the employee at any

time and an express statement that the employer did not intend to waive its rights to terminate an employee unilaterally by promulgating the policy handbooks. ***Id.*** at 1088-89. In distinguishing ***Shaw*** and ***Perry***, this Court in ***Bobbitt*** found the missing disclaimer in the employee handbook pivotal and stated:

> Had there been in ***Shaw*** and ***Perry*** an employee's manual purporting to give the employees the same protection as in this case, and there had been, *again as in this case, no express disclaimer or contractual provision that the manual did not effect the employer's right to terminate the employee at-will, without question we would have required the employer in both cases to abide by its own manual*.

***Bobbitt***, 603 So.2d at 361 (emphasis supplied).

¶12. Byrd continues with a discussion of a litany of cases which involved at-will employment relationships and "disclaimers" as defined by Byrd as "provisions in an employee handbook which purport to say that even though the handbook appears to grant employees certain rights, the employer is actually not bound by the handbook." *See* ***Hartle v. Packard Elec.***, 626 So.2d 106 (Miss. 1993) (holding that employee handbook containing warning that policies and procedures contained therein did not constitute legal contract, did not alter the at-will status of employment relationship and did not limit employer's discretion to discharge except for just cause); ***McCrory v. Wal-Mart Stores, Inc.***, 755 So.2d 1141 (Miss. Ct. App. 1999)(employer's mere act of listing certain conduct that might warrant immediate discharge in handbook did not take employees out of at-will status by creating reasonable contractually-based expectation in employees that any offense not so listed would require employer to engage in disciplinary process provided in handbook). The distinguishing factor between the instant case and the two above-mentioned cases, Byrd contends, is that in ***Hartle*** and ***McCrory*** the plaintiffs relied on the handbook for the proposition that the handbook changed the employment from a month-to-month to "for-cause" employment. Further, Byrd submits that the facts of those cases presented no hearing rights, hearing procedures, or termination rules established by the manual which was in dispute.

¶13. The crux of Byrd's argument is that Imperial's handbook, which provides specific grievance procedures, still leaves the employment at-will and allows the employer to terminate employment for any reason. However, Byrd contend that Imperial is limited in its actions because the handbook also requires the employer to follow the handbook's procedures in effecting the termination. Accordingly, Byrd argues that she should be granted a grievance hearing.

¶14. Further, Byrd argues that this Court has never clarified what types of disclaimers are allowed in employee handbooks or whether any disclaimers should be allowed. Byrd provides support for this argument by attempting to distinguish and label different types of disclaimers for the purpose of arguing that different types of disclaimers would have different effects on the employment relationship.[2] ***Bobbitt***, Byrd suggests, involved a "procedural situation," and she further suggests that this Court explicitly reiterated that:

> regardless of the type or extent of the "disclaimer" involved, employers were held to their word; at-will employments remained at-will, but employers were still required, in terminating employees, to at least honor the <u>procedural</u> termination rules in their own Employee Handbooks.

Byrd proposes that employers should not be allowed to negate clear and definite termination procedures with handbook disclaimers and if allowed to do so these disclaimers should be unambiguous about negating termination procedures.

¶15. In related arguments, Byrd alleges that even if the disclaimer is found effective, based on the affidavits of former employee Dennis Wiley, which provided that Imperial never intended to give employees hearings, then Imperial is perpetrating a fraud. Additionally, Byrd charges that in its initial pleadings she alleged that Saucier made a false statement to Imperial that contributed to her being terminated. These allegations, Byrd submits, were valid tort actions which were improperly dismissed when the trial court granted Imperial summary judgment. The trial court, Byrd maintains, was never presented with a motion seeking to dismiss the claims against Saucier for false statements and these claims involved factual issues in dispute. Thus, Byrd concludes, the judgment dismissing the claims was erroneous.

¶16. Imperial maintains that Mississippi has long recognized the at-will doctrine with very few limitations, such as the exceptions found in *Bobbitt* and *McArn*. *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603, 607 (Miss. 1993)(holding that narrow public policy exception to at will doctrine in instance where an employee refuses to participate in an illegal act and where the employee reports illegal acts of his employer); *Bobbitt*, 603 So.2d at 361(holding that when employer disseminates a handbook to employees with specific procedures for disciplinary actions and which contains no disclaimer, the employer must abide by procedures).

¶17. Imperial contends that the handbook in the instant case contained two "express, unambiguous, and unequivocal" disclaimers that it preserved the at-will relationship with its employees and advised that it was not a contract. Imperial, noting Byrd's argument that she is only seeking a hearing to dispute her termination and not any alteration in her at-will employment status, cites to the case of *Southwest Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So.2d 1257 (Miss. 1996). *Lawrence*, Imperial argues, clarifies the necessity for the elementary distinction between whether the claim is prompted by a termination or simply claims entitlement to an independent benefit. Therefore, Imperial suggests, any challenge to limit an employer's right to terminate without notice or cause in the face of an expressed disclaimer negates the holdings of all the cases supporting the at-will doctrine. *Hartle v. Packard Elec.*, 626 So.2d 106 (Miss. 1993) (holding that disclaimer in handbook preserved employer's right to terminate employee at will); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086 (Miss. 1987) (holding that an employee handbook cannot be considered a contract between employer and employee where it explicitly states that the employee may be terminated at will); *McCrory v. Wal-Mart*, 755 So.2d 1141 (Miss. Ct. App. 1999) (reasoning that disclaimers in employee's manuals have the purpose of preserving the employment at-will doctrine).

¶18. Byrd misreads the language in *Bobbitt*. Although Imperial's manual sets forth a grievance procedure for terminated employees, there is a disclaimer which expressly provides that the employment relationship between Byrd and Imperial is at-will and may be terminated at any time, for any reason, by either party. The facts of the case sub judice are more similar to the facts of *Shaw* and *Perry*, than they are to *Bobbitt* which did not involve a disclaimer. Thus, this handbook does not fit the exception provided for in *Bobbitt*. The handbook here does not create a contractual obligation that would tend to override the at-will doctrine. Accordingly, we uphold Imperial's right to discharge Byrd, even in light of the grievance procedure, because of the handbook's statement that Imperial did not intend to waive its right to unilaterally terminate an employee by promulgating the handbook.

## CONCLUSION

¶19. For the reasons set forth above, we hold that the trial court did not err in granting Imperial's motion for summary judgment. Therefore, the judgment of the Harrison County Circuit Court is affirmed.

¶20. **AFFIRMED**.

**PITTMAN, C.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

1. (1) Whether, in general, the provisions of the Defendant's Employee Handbook are binding on the Defendant Casino; (2) Whether, in particular, the termination hearing procedures in the Defendant's Employee Handbook are binding on the Casino; (3) Whether provisions in the Employee Handbook stating that Plaintiff's employment was "at will" and that the Handbook was not a "contract" nullify the otherwise binding effect of the Handbook; (4) Whether an Employer such as the Casino may deny to its employees rights granted to them by the Employer's own Employee Handbook by inserting a "disclaimer" in another part of the Handbook; (5) Whether an Employer may deny to its employees rights granted to them by the Employer's Handbook by language in the Handbook which does not clearly state it does so; (6) Whether the Casino is liable to the plaintiff for the wrongful acts and false statements of its supervisor; (7) Whether the Casino established that there was no issues of material fact entitling the Casino to summary judgment.

2. For example, Byrd defines a disclaimer that only reminds that employment is at will and/or that the handbook is not a contract as a reminder disclaimer. A disclaimer that fully informs employees that the handbook has no binding effect whatsoever is a full disclaimer. Byrd also categorizes situations in which employee handbooks are sought to be used to convert an at-will employment to one of permanent or indefinite length "conversion situations." Where a handbook is used, not to convert an at-will employment to something more permanent, but only to force the employer to honor disciplinary rules and termination procedures, Byrd terms "a procedural situation."